05-0149-pr
Thibodeau v. Portuondo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: March 1, 2007        Decided: May 11, 2007)

Docket No. 05-0149-pr

_____

GARY THIBODEAU,

*Petitioner-Appellant*,

v.

LEONARD PORTUONDO,

*Respondent-Appellee*.

_____

Before:  JACOBS, *Chief Judge*, CARDAMONE and SOTOMAYOR, *Circuit Judges*.

Petitioner-appellant Gary Thibodeau appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.), denying and dismissing his petition for a writ of habeas corpus, which challenged New York's first-degree kidnapping statute, N.Y. Penal Law § 135.25(3), as unconstitutionally vague under the Fourteenth Amendment on the ground that the law fails to specify a definite time period after which a victim's absence may give rise to a presumption that the victim is dead. We reject petitioner's contention that the law is unconstitutionally vague and affirm the judgment of the district court.

AFFIRMED.

Randi Juda Bianco, Bianco Law Offices,

Syracuse, New York, *for Petitioner-Appellant*, on submission.

MICHELLE MAEROV, Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York, Robin A. Forshaw, Deputy Solicitor General for Criminal Matters, *on the brief*), New York, New York, *for Respondent-Appellee.*

SOTOMAYOR, *Circuit Judge*:

Petitioner-appellant Gary Thibodeau appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.), denying and dismissing his petition for a writ of habeas corpus, which challenged New York's first-degree kidnapping statute, N.Y. Penal Law § 135.25(3) ("section 135.25(3)"), as unconstitutionally vague under the Fourteenth Amendment's Due Process Clause. Thibodeau argues that the law, for which a conviction requires a jury to find that an abducted person died during the abduction or before he or she could return or be returned to safety, *id.*, is void for vagueness because it fails to specify a time period after which a victim's absence may give rise to a presumption of death. For the reasons to be discussed, we reject Thibodeau's argument that section 135.25(3) is unconstitutionally vague and affirm the judgment of the district court.

## BACKGROUND

Heidi Allen, an eighteen-year-old cashier at a convenience store in New Haven, New York, disappeared from her job on the morning of April 3, 1994. Four months later, her whereabouts still unknown, a grand jury in Oswego County, New York, charged Thibodeau and his brother Richard with, *inter alia*, first-degree kidnapping in violation of section 135.25(3) in connection with Allen's disappearance and presumptive death. Section 135.25(3) declares that

"[a] person is guilty of kidnapping in the first degree when he abducts another person" and when "[t]he person abducted dies during the abduction or before he is able to return or to be returned to safety." The law further provides for an evidentiary presumption of death arising

> from evidence that a person whom the person abducted would have been
> extremely likely to visit or communicate with during the specified period
> [between the termination of the abduction and trial] were he alive and free to do
> so did not see or hear from him during such period and received no reliable
> information during such period persuasively indicating that he was alive.

N.Y. Penal Law § 135.25(3).[1]

Thibodeau was brought to trial in 1995. At trial, the People introduced evidence linking Thibodeau to Allen's abduction, including, *inter alia*, eyewitness testimony that at the time of the kidnapping his brother's van was parked in front of the convenience store from which Allen was abducted, that two men then held and subdued a young woman in that store parking lot, and that shortly thereafter the same van was swerving erratically on a nearby road because of an apparent struggle inside the vehicle. Other witnesses testified that they heard yelling and screaming emanating from Thibodeau's house on the morning of Allen's disappearance. Two jailhouse informants further recounted that while awaiting trial, Thibodeau had admitted that he occasionally used drugs with Allen, that the two had had an altercation, that Allen had been bludgeoned to death with Thibodeau's own shovel, and that her body was hidden in a location which authorities would never find. After her disappearance, Allen's parents and her boyfriend, all of whom had, prior to her abduction, enjoyed daily contact with her, testified that they had not seen or heard from her after April 3, 1994. (Allen, in fact, has never been seen or heard from

---

[1] The law defines the term "abduct" as "restrain[ing] a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." N.Y. Penal Law § 135.00(2).

again.)  The jury found Thibodeau guilty of first-degree kidnapping under section 135.25(3) and he was sentenced principally to twenty-five years' to life imprisonment.[2]

Thibodeau filed a timely direct appeal in state court, alleging as he had before the trial court, *inter alia*, that section 135.25(3) is unconstitutionally vague because it lacks any definite time period by which an abducted, missing person may be presumed dead, thus creating an arbitrary and unreasonable presumption of death.  The Appellate Division, Fourth Department rejected Thibodeau's appeal in a published decision, *People v. Thibodeau*, 700 N.Y.S.2d 621 (4th Dep't 1999).   The New York Court of Appeals denied leave to appeal, *People v. Thibodeau*, 95 N.Y.2d 805 (2000) (table), after which Thibodeau filed this habeas action pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of New York.  In his petition, Thibodeau reiterated his contention that section 135.25(3) is unconstitutionally vague because it fails to specify a time period after which the presumption of death may apply.  The petition was referred to Magistrate Judge David E. Peebles, who issued a Report and Recommendation on October 28, 2004, recommending that the petition be denied as to the vagueness claim.  **[A31-34]** The district court, after considering Thibodeau's objections, adopted the Report and Recommendation in full.  **[A35-37]** Thibodeau subsequently moved the district court to issue a certificate of appealability ("COA"), which the district court granted only as to the question of vagueness.  **[A40]**  This timely appeal followed.[3]

---

[2] Richard Thibodeau proceeded to trial after his brother's conviction; the jury acquitted him of all charges.

[3] On May 4, 2006, this Court denied Thibodeau's motion to expand the COA to include the other bases upon which the district court had denied and dismissed his habeas petition.

## DISCUSSION

**I.      Standard of Review under 28 U.S.C. § 2254**

We review a district court's denial of a petition for a writ of habeas corpus *de novo*, but review its determination of facts for clear error. *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003).

Under 28 U.S.C. § 2254(d)(1), a court may grant a habeas petition with respect to "any claim that was adjudicated on the merits in State court proceedings" only where the state court's judgment

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

The Supreme Court has held that the phrases "contrary to" and "unreasonable application of" establish independent bases for fulfilling the requirements of § 2254(d)(1). *Williams v. Taylor*, 529 U.S. 362, 404 (2000). First, a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. *Id.* at 405-06; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). Second, a state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413. We have acknowledged that the meaning of "unreasonable" in this context is at times "difficult to define," *Christie v. Hollins*, 409 F.3d 120, 125 (2d Cir. 2005) (internal quotation marks omitted), but, as the Supreme Court

has elucidated, the standard requires at least that the state court be "more than incorrect or erroneous," *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). It must, in fact, be "objectively unreasonable." *Id.*

**II.     Vagueness**

A.     Standards for the Void-for-Vagueness Doctrine

It is well-established that the Fourteenth Amendment, which guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, ensures that the individual need not "speculate as to the meaning of penal statutes" and is "entitled to be informed as to what the State commands or forbids," *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). As one of the "most fundamental protections of the Due Process Clause," *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006), the void-for-vagueness doctrine requires that "laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them,'" *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

Supreme Court jurisprudence recognizes two independent grounds upon which a statute's language may be so vague as to deny due process of law. First, a law violates due process "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Animating this first vagueness ground is the constitutional principle that individuals should receive fair notice or warning when the state has prohibited specific behavior or acts. *See Smith v. Goguen*, 415 U.S. 566, 572 (1974) ("The doctrine incorporates notions of fair notice or warning."). Second, a law

is unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. This second ground, which the Supreme Court recognizes as "the more important aspect of the vagueness doctrine," mandates that laws contain "minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Indeed, statutes must "provide explicit standards for those who apply" them to avoid "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108-09.

The Supreme Court has cautioned that this doctrine does not require "meticulous specificity" from every statute, *id.* at 110, as language is necessarily marked by a degree of imprecision, *Farrell*, 449 F.3d at 485. Instead, "[t]he degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). While economic regulations are "subject to a less strict vagueness test," we apply a more stringent analysis when examining laws that impose criminal penalties because the consequences of imprecision are qualitatively more severe. *Id.* at 498-99.

This case does not present the typical vagueness challenge because the language Thibodeau alleges is unconstitutional concerns not the specific elements of the first-degree kidnapping statute but rather the evidentiary presumption of death that the statute permits in certain situations.[4] While Thibodeau has cited no cases where courts have applied the void-for-

---

[4] As respondent's brief mentions, but does not fully address, the Supreme Court has noted that an evidentiary presumption violates the Due Process Clause of the Fourteenth Amendment if it "undermine[s] the factfinder's responsibility at trial, based on the evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *County Court of Ulster County v. Allen*, 442 U.S. 140, 156 (1979). We do not address this doctrine both because Thibodeau

vagueness doctrine to an evidentiary presumption – and we are unaware of any – vagueness analysis is appropriate here because the presumption, as applied by the police and the jury, satisfied a required element of the first-degree kidnapping statute, leading to Thibodeau's arrest and conviction, a clear deprivation of his "liberty." Thus, we must determine whether the State properly deprived Thibodeau of his liberty, particularly where it has accorded to the police and jury the discretion to determine whether the length of time a kidnapping victim has been missing is sufficient to presume his or her death in a criminal case.

B. Vagueness Analysis

A statute may be challenged on vagueness grounds either as applied or on its face. Both types of vagueness challenge require the inquiry described above, *see Farrell*, 449 F.3d at 485, but the two differ in terms of what parties may assert and how these challenges may be brought. Because Thibodeau does not address in his brief which type of challenge he is bringing here, we analyze each type in turn.

---

explicitly waived the argument in his brief, App. Br. at 7 (stating "[t]he defect in Penal Law § 135.25(3) is not so much the presumption itself . . . ."), and because it does not appear that he ever made such an argument to the state courts, rendering the claim, even if before us, unexhausted, *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies."). Moreover, Thibodeau's failure to assert an *Allen* challenge – a challenge upon which we express no opinion – does not impact in any way the vagueness analysis here because *Allen* and like cases involve an entirely different species of due process, separate and distinct from a vagueness challenge. Indeed, whereas the vagueness doctrine focuses on the Fourteenth Amendment's guarantee to prevent law enforcement and juries from exercising unbridled discretion in applying the laws, the evidentiary presumption cases like *Allen* examine whether a presumption unconstitutionally usurps the jury's role to find the elements of a crime beyond a reasonable doubt.

### i.  As-Applied Challenge

We begin with the analysis of the "as applied" challenge because "the permissibility of a facial challenge sometimes depends upon whether the challenged regulation was constitutional as applied to the plaintiff." *Id.*  Indeed, the Supreme Court instructs courts to "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. at 495.

We thus turn to whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed.  We find no ambiguity in the state legislature's wording of the statute, it being pellucidly clear to the ordinary person that the State had made it a criminal offense to "restrain a person with intent to prevent his liberation" through "holding him in a place where he is not likely to be found," or "threatening to use deadly physical force," N.Y. Penal Law § 135.00, where such abduction resulted in the death of the abducted, *id.* § 135.25(3).  In any case, by not addressing this argument at all in his brief, Thibodeau has waived any argument that the statute is vague on this ground.  *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

Thibodeau's challenge, properly distilled, focuses on the second vagueness ground – whether the law accords unfettered discretion to law enforcement and juries.   Indeed, Thibodeau claims that section 135.25(3) "gives law enforcement personnel unfettered discretion to deem a missing person allegedly kidnapped to be dead simply because neither friends nor family have . . . heard from such person."  Additionally, he notes that the presumption of death "is typically subject to a set of objective guidelines to guide those enforcing the law," citing court decisions and state laws that presume death in the civil context only after a fixed period of years has passed

with no contact from, or the reappearance of, the missing person.[5] In essence, by failing to specify a fixed time period after which an abducted person will be presumed dead, the law, in Thibodeau's eyes, gives excessive discretion to police and juries by permitting their own arbitrary whims and predilections to decide when a kidnapping victim has been missing long enough that the presumption should attach.

In examining challenges on the second ground, we have recently concluded that courts undertaking an as-applied challenge may determine either (1) that a statute as a general matter provides sufficiently clear standards to minimize the risk of arbitrary enforcement or (2) that, even without such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement was not the result of the unfettered discretion that law enforcement officers and factfinders might have in other, hypothetical applications of the statute. *Farrell*, 449 F.3d at 494.

We agree with New York's Appellate Division, Fourth Department, which ruled on Thibodeau's direct appeal, that section 135.25(3)'s standards are sufficiently clear because the "presumption of death operates only in those circumstances in which the People establish that the victim has been abducted and subsequently not seen or heard from even though it is 'extremely likely' that the victim otherwise would have visited or communicated with family or friends."

---

[5] In his brief, Thibodeau notes that with the presumption of death "involving a missing person, a period of time, ranging from 3 to 7 years, has been required before the presumption . . . becomes applicable," citing sources such as Wigmore and English common law. He also refers to New York Estates, Powers and Trusts Law ("EPTL") section 2-1.7(a), which states in pertinent part that "[a] person who is absent for a continuous period of three years, during which, after diligent search, he or she has not been seen or heard of or from, and whose absence is not satisfactorily explained shall be presumed . . . to have died."

*Thibodeau*, 700 N.Y.S.2d at 625 (quoting N.Y. Penal Law § 135.25(3)). Moreover, the statute "further requires proof that the victim's family, friends, or other contacts have received 'no reliable information . . . persuasively indicating that' the victim remains alive." *Id.* (quoting N.Y. Penal Law § 135.25(3)). Far from granting the police and prosecutors the unfettered discretion to use any amount of time that a person is missing to create a presumption of death, these two factors severely limit the application of the presumption. They provide instead objective criteria, ensuring that the statute's presumption does not apply "only at the whim of any police officer." *Kolender*, 461 U.S. at 358 (internal quotation marks omitted). And it is precisely the objectivity and clarity of section 135.25(3)'s criteria that convince us that the statute is not unconstitutionally vague. Indeed, section 135.25(3) does not resemble the standardless laws the Supreme Court has found unconstitutionally vague – laws that, for example, required an individual to provide "credible and reliable" identification at the request of the police officer without explaining how the police officer was to determine the credibility of an identification, *id.* at 353, or that required "[t]hose generally implicated by the imprecise terms of the ordinance . . . to comport themselves according to the life style deemed appropriate by the Jacksonville police and the courts," *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972). *See also Smith*, 415 U.S. at 578 ("The language at issue is void for vagueness as applied to Goguen because it subjected him to criminal liability under a standard so indefinite that police, court, and jury were free to react to nothing more than their own preferences for treatment of the flag.").

Section 135.25(3) instead parallels those statutes that incorporate express restrictions or provide some meaningful guidelines as to their proper enforcement, and courts have generally not hesitated to uphold such laws. *See, e.g.*, *United States v. Nadi*, 996 F.2d 548, 552 (2d Cir.

-11-

1993) (concluding that 18 U.S.C. § 1031, which prohibits certain kinds of fraud by government contractors, "sets forth clear requirements to guide prosecutors" by specifying the type of contract at issue and the contract value required). Indeed, in *United States v. Schneiderman*, 968 F.2d 1564 (2d Cir. 1992), *abrogated on other grounds by Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513 (1994), this Court, confronted with a vagueness challenge to 21 U.S.C. § 857's proscription of the interstate or foreign sale of "drug paraphernalia," found no constitutional infirmity because the law defined "drug paraphernalia" by enumerating fifteen examples of the items Congress sought to target and by listing additional objective criteria to guide law enforcement in applying the statute. *Id.* at 1568. As with 21 U.S.C. § 857, we find that section 135.25(3) establishes reasonable limiting criteria and standards that preclude the arbitrary whims of police or juries from controlling when the presumption of death should apply in any given context.

Our holding is further corroborated by the well-settled legal principle we articulated in *Schneiderman* that the Constitution does not ban *all* discretion on the part of police officers or prosecutors as "[e]ffective law enforcement often 'requires the exercise of some degree of police judgment.'" *Id.* (quoting *Grayned*, 408 U.S. at 114). Due process, after all, does not impose "impossible standards," and lest we convert the Constitution into an "insuperable obstacle to legislation," we must acknowledge that it requires only reasonable precision in criminal statutes. *United States v. Petrillo*, 332 U.S. 1, 7 (1947). Given the above, it is clear that section 135.25(3) permits the police and juries a reasonable and circumscribed level of discretion to presume an abducted individual's death. With such express statutory safeguards, we hold that the law is not unconstitutionally vague and that the decision of the New York courts on this claim was

therefore not contrary to, nor an unreasonable application of, clearly established federal law.

Even assuming, *arguendo*, that the statute did not provide sufficient objective, explicit criteria to prevent arbitrary enforcement, the statute as applied to Thibodeau would not be unconstitutionally vague because the conduct to which the statute was applied falls within the "core meaning" of the statute. *See Smith*, 415 U.S. at 577-78 (noting that "there are statutes that by their terms . . . apply without question to certain activities, but whose application to other behavior is uncertain," and that such laws may not be vague as applied to a "hard-core violator . . . whatever its implications for those engaged in different conduct"). Or, more particularly, the circumstances of Thibodeau's case coincide with the circumstances that strongly reinforce the presumption. This is not a case in which, for example, a parent has kidnapped a child from a former spouse.

As the government correctly notes, the presumption in section 135.25(3) was enacted because of the "impossibility of proving death in many instances where the victim simply is never found or seen again." Denzer and McQuillan, *Practice Commentary*, McKinney's Consolidated Laws of New York, 39 Penal Law § 135.25(3) (1967), *quoted in* Donnino, *Practice Commentary*, McKinney's Consolidated Laws of New York, 39 Penal Law § 135.25(3) (1998). The core meaning of section 135.25(3)'s presumption is to assume death where an individual has been kidnapped by restraint or threat of deadly force – rather than where he or she has merely disappeared or absconded – for a time sufficient that it would be "extremely likely" for the victim to have contacted family or close friends, if still alive. Here, because testimony at trial established that Allen had daily interactions with her parents and boyfriend and that none had heard from her since her abduction – a time period totaling four months at Thibodeau's

indictment and more than a year at the time of trial – the conduct readily falls within the statute's core meaning. Moreover, evidence adduced at trial demonstrated the violent nature of the abduction, including the struggles eyewitnesses observed in the store parking lot and in Thibodeau's brother's van, the screams emanating from Thibodeau's house on the day of the kidnapping, and the informants' testimony that Thibodeau knew that Allen was dead and that she was buried where police would never look. The jury could easily have surmised from this evidence that Allen had been kidnapped and was dead. The jury's presumption here readily falls within the statute's core meaning – "whatever its implications for those engaged in different conduct" – and thus was not unconstitutionally applied to Thibodeau. *Smith*, 415 U.S. at 577.

Thibodeau's citation to *Cunnius v. Reading School Dist.*, 198 U.S. 458 (1905), does not alter the analysis here. In that case, the Supreme Court held that a Pennsylvania state statute granting state courts the power to adjudicate the administration of estates when the owner had been missing for a certain period of time – seven years – was constitutional and did not violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 469-76. The Court went on to analyze the length of time required to create the presumption of death so that the state courts could administer a suit concerning the distribution of the missing person's property, as well as the statute's notice provisions. Deeming both constitutionally acceptable, the Court observed that "the creation by a state law of an arbitrary and unreasonable presumption of death resulting from absence for a brief period, would be a want of due process of law." *Id.* at 476-77. The Court did not elaborate on what it meant by this broad statement, and nothing in the opinion suggests that a seven-year time period – or any other fixed period of time – was constitutionally required, nor that a "brief period" would encompass the time period in the instant case. It may

well be that a "brief period" of absence is not sufficient under the Due Process Clause, but as outlined above, those concerns are assuaged both by the guidelines enumerated in the statute itself and by the factual scenario in this case, which falls at the heart of the statute's meaning. *Cunnius*, therefore, does not preclude application of the law section 135.25(3).

Finally, we find no merit to Thibodeau's argument that because the presumption of death in civil statutes specify time periods, criminal statutes by implication must as well in order to satisfy due process. A survey of such laws does not persuade this Court that section 135.25(3) is vague. First, as the magistrate judge astutely observed in his Report and Recommendation, while Thibodeau is correct to point out that some cases and statutes require a person's absence for a specified period before a presumption of death applies, he "neglects to acknowledge the well-established principle that the period of time that must elapse . . . is substantially reduced where there is evidence that the missing person's life was in peril around the time of his or her disappearance." **[A 32]** *Compare* EPTL § 2-1.7(a) (establishing a three-year absence for presumption of death of a missing person) *with id.* § 2-1.7(b) ("The fact that [a] person was exposed to a specific peril of death may be a sufficient basis for determining at any time after such exposure that he or she died less than three years after the date his or her absence commenced.").[6] **[A32]** Second, a time period of the length that Thibodeau appears to be arguing as an appropriate one after which a presumption of death may apply in kidnapping cases – at least several years – would impair the legitimate functions of the justice system and would run counter to the common run of experience that ordinarily justifies a presumption: it would be odd indeed

---

[6] We note that *Cunnius* only dealt with missing (as opposed to abducted) individuals, further making that case inapposite to the one at bar.

-15-

for a kidnapped person to be entertained alive for years by her kidnapper, or to be released without reporting in.

Thus, finding no merit in the argument that the New York state courts decisions in Thibodeau's case were contrary to or involved an unreasonable application of clearly established federal law, we hold that section 125.35(3) as applied here was not unconstitutionally vague.

### ii. Facial Challenge

A facial challenge is "a species of third party (*jus tertii*) standing" by which "a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 144-45 (2d Cir. 2000) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55-56 n.22 (1999) (plurality opinion)). In *Farrell*, this Court recognized that "[f]ederal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties." 449 F.3d at 494. We have created exceptions to this general rule, but our disinclination towards third-party or *jus tertii* standing remains steadfast because it serves institutional interests by ensuring that the issues before the court are "concrete and sharply presented." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984). We need not decide whether Thibodeau is well situated to bring a facial challenge because he has not articulated a single hypothetical application of section 135.25(3) that would be unconstitutional. As a result, he has not actively argued or characterized his claim as a facial challenge, and his claim here accordingly fails.

# CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.