07-1148-ag
Arriaga v. Mukasey

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: December 13, 2007          Decided: March 27, 2008)

Docket No. 07-1148-ag

- - - - - - - - - - - - - - - - - - - -X

NELSON ARRIAGA,

                    Petitioner,

          - v.-

MICHAEL B. MUKASEY,[1]

                    Respondent.

- - - - - - - - - - - - - - - - - - - -X

          Before:  JACOBS, Chief Judge, POOLER and SACK, Circuit Judges.

          Petition for review of the BIA's final order of removal, dismissing petitioner's appeal from an immigration judge's decision ordering removal, pursuant to INA § 237(a)(2)(E)(i), on the basis of petitioner's conviction for

_____

          [1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as respondent in this case.

the offense of stalking. The stalking provision of the removal statute is not unconstitutionally vague, on its face or as applied to petitioner. The petition is denied.

RAMIRO ALCAZAR, Meriden, Connecticut, for Petitioner.

JAMES A. HUNOLT, Senior Litigation Counsel, Officer of Immigration Litigation, Civil Division, United States Department of Justice (Peter D. Keisler, Assistant Attorney General, and John P. Devaney, Trial Attorney, on the brief), Washington, D.C., for Respondents.

DENNIS JACOBS, Chief Judge:

Nelson Arriaga ("Arriaga") petitions for review of a final order of removal of the Board of Immigration Appeals ("BIA"). The BIA dismissed Arriaga's appeal from the decision of the Immigration Judge ("IJ") Paul M. Gagnon, which sustained Arriaga's removability under the subsection of the Immigration and Nationality Act ("INA") that renders deportable any alien convicted of stalking. See INA § 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i) ("the INA stalking provision"). In re Arriaga, A74 913 575 (B.I.A. Feb. 28, 2007), aff'g No. A74 913 575 (Immig. Ct. Hartford Nov. 29, 2006). Arriaga concedes that he was convicted of stalking under Connecticut's penal code, but he argues that

2

the INA stalking provision, which does not define "stalking," is unconstitutionally vague, on its face and as applied. This challenge presents a question of first impression in the courts of appeals.

## BACKGROUND

Arriaga, a native and citizen of Honduras, was admitted to the United States as a lawful permanent resident in 2000. In October 2004, Arriaga pled guilty in Connecticut Superior Court to stalking in the second degree under Connecticut General Statutes § 53a-181d(a):

> A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety.

In March 2006, the Immigration and Naturalization Service ("INS") commenced removal proceedings against Arriaga pursuant to INA § 237(a)(2)(E)(i), which provides: "Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." 8 U.S.C. § 1227(a)(2)(E)(i) (emphasis added). The INS added a second charge of deportability pursuant to

3

INA § 237(a)(2)(A)(i), which provides for the removal of an alien convicted of a crime involving moral turpitude committed within five years after the date of admission. See 8 U.S.C. § 1227(a)(2)(A)(i).

At his hearing in July 2006, Arriaga conceded the conviction, but argued that the offense was insufficiently violent or depraved to justify removal under the applicable statutes. The IJ ruled Arriaga removable because his crime was one of moral turpitude. But in October 2006, the BIA, citing the IJ's failure "to provide reasons and bases for his conclusion," remanded for the IJ to prepare a full decision.

The IJ's November 2006 post-remand decision found that Arriaga is removable under both grounds charged by the INS. As to stalking, undefined in the INA, the IJ looked to the law dictionary and decided that the common law and the Connecticut statute "criminalize the same type of behavior: that of following another individual with the intent of causing him or her harm or to fear harm." The IJ accordingly found that Arriaga's Connecticut conviction qualified as a conviction for a crime of stalking under the INA. The IJ also ruled that stalking involves moral turpitude because it entails predatory and inherently threatening conduct.

4

In February 2007, the BIA affirmed the removal order and dismissed the appeal, stating: "[I]nasmuch as [Arriaga's] conviction is clearly a crime of stalking, we find no error in the Immigration Judge's conclusion that he is deportable pursuant to section 237(a)(2)(E)(i)." The BIA declined to consider whether Arriaga is also deportable for having been convicted of an offense involving moral turpitude. The BIA recognized that the agency lacks jurisdiction to consider Arriaga's argument that the INA stalking provision is unconstitutionally vague. See Matter of Fuentes-Campos, 21 I. & N. Dec. 905, 912 (BIA 1997); Matter of C-, 20 I. & N. Dec. 529, 532 (BIA 1992); see also Zerrei v. Gonzales, 471 F.3d 342, 345 n.3 (2d Cir. 2006) (per curiam).

**DISCUSSION**

On this appeal, Arriaga challenges only the constitutionality of the INA stalking provision, arguing that the provision is void for vagueness on its face, and as applied in his case, because it does not define the word "stalking." We review de novo constitutional challenges to a statutory provision. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 493 (1991); Field Day, LLC v. County of Suffolk, 463 F.3d 167, 176 (2d Cir. 2006).

5

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

The "void for vagueness" doctrine is chiefly applied to criminal legislation. Laws with civil consequences receive less exacting vagueness scrutiny. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982) (expressing "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."); Chatin v. Coombe, 186 F.3d 82, 86-87 (2d Cir. 1999) (scrutinizing "closely" a prison regulation prohibiting religious services because its penalties were more akin to criminal than civil penalties); see also Jordan v. De George, 341 U.S. 223, 231 (1951) (reviewing deportation provision for vagueness because of the "grave nature" of the penalty of forfeiting one's residence). The

6

statute reviewed in Jordan v. De George was an earlier version of the same section of the INA at issue here (specifically, the subpart authorizing deportation for crimes involving moral turpitude). The Court "emphasized that this statute does not declare certain conduct to be criminal" and that "[i]ts function is to apprise aliens of the consequences which follow after conviction and sentence." Id. at 230. However, because deportation is a "drastic measure," the Court assessed the statute for vagueness as if it imposed a criminal penalty. Id. at 230-31 (internal quotation marks and citation omitted); see also Restrepo v. McElroy, 369 F.3d 627, 635 n.16 (2d Cir. 2004) ("deportation, like some other kinds of civil sanctions, combines an unmistakable punitive aspect with non-punitive aspects"). We need not decide whether the INA stalking provision should be assessed as a civil or criminal statute because even under the close scrutiny accorded criminal laws, Arriaga's vagueness challenge fails.

**I**

Claims of facial invalidity are generally limited to statutes that threaten First Amendment interests. See Chapman v. United States, 500 U.S. 453, 467 (1991) ("First

7

Amendment freedoms are not infringed by [the statute at issue], so the vagueness claim must be evaluated as the statute is applied.").  Arriaga does not claim that the INA stalking provision compromised his First Amendment rights. "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."  Maynard v. Cartwright, 486 U.S. 356, 361 (1988); see United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (en banc) ("[W]hen . . . the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" (quoting United States v. Nadi, 996 F.3d 548, 550 (2d Cir. 1993)).

Although we have suggested that some facial vagueness challenges may be brought where fundamental rights are implicated outside the First Amendment context, we need not pursue that issue because Arriaga has not identified a fundamental right compromised by the INA stalking provision. See Farrell v. Burke, 449 F.3d 470, 495-96 & n.11 (2d Cir. 2006) (noting that Rybicki suggests that facial vagueness challenges may be brought where other fundamental rights are

8

at stake).  Arriaga characterizes the INA stalking provision as a restriction on the right to travel and to interstate movement.  See Mem'l Hosp. v. Maricopa County, 415 U.S. 250, 254 (1974) (recognizing the right of interstate travel as a "basic constitutional freedom").  However, the INA provision does not prohibit stalking; it provides for removal of aliens who have been convicted of that offense.  In that light, the INA stalking provision is an exercise of the fundamental authority of the political branches to exclude undesirable aliens.  "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens."  Fiallo v. Bell, 430 U.S. 787, 792 (1977) (internal quotation marks and citation omitted); Galvan v. Press, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. . . . [and] the formulation of these policies is entrusted exclusively to Congress.").

Opportunities to challenge the underlying offense of stalking as a violation of Arriaga's right to travel were presented at his criminal trial, or on appeal or collateral review of that conviction.  However, collateral attack on a state criminal conviction is not available on a petition to

review the BIA's removal decision.  See Abimbola v. Ashcroft, 378 F.3d 173, 181 (2d Cir. 2004).  Having conceded the validity of his stalking conviction for the purposes of the immigration laws, Arriaga cannot interpose the right to travel as the predicate for a facial challenge to the statute that treats the conviction as a ground for removal.[2]

## II

In deciding the vagueness challenge "as applied" to Arriaga's case, we employ the two-part Kolender inquiry: Does the INA stalking provision provide (A) sufficient notice and (B) limits on the discretion of law enforcement

---

[2] The Supreme Court has suggested that a statute that does not reach constitutionally protected conduct, "may nevertheless be challenged on its face as unduly vague, in violation of due process."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982); see City of Chicago v. Morales, 527 U.S. 41, 55 (1999) (suggesting, in plurality opinion, that facial challenge is appropriate outside First Amendment context "[w]hen vagueness permeates the text.").  But see Rybicki, 354 F.3d at 131 (declining to follow the Morales dicta because it did not command a majority).  However, the challenger in such a case "must demonstrate that the law is impermissibly vague in all of its applications."  Vill. of Hoffman Estates, 455 U.S. at 497; see also United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge . . . is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").  Even if Arriaga were entitled to bring this type of facial challenge, it would fail because, as set forth in Section II, infra, he cannot establish that the statute is vague in his own case.

10

authorities?  Kolender, 461 U.S. at 357; see Thibodeau v. Portuondo, 486 F.3d 61, 65-66 (2d Cir. 2007).

A.  The first Kolender inquiry asks whether the statute, as written, provides notice sufficient to alert "ordinary people [as to] what conduct is prohibited." Kolender, 461 U.S. at 357.  "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.  All are entitled to be informed as to what the State commands or forbids."  Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).  Statutes need not, however, achieve "meticulous specificity," which would come at the cost of "flexibility and reasonable breadth." Grayned, 408 U.S. at 110.  "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  Jordan v. De George, 341 U.S. 223, 231-31 (1951) (citing Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).

Jordan involved facts analogous to the present case. An alien twice convicted of fraud and tax evasion was subject to deportation pursuant to the predecessor version of the INA provision authorizing removal for "crimes

11

involving moral turpitude," a capacious phrase undefined in the statute. Jordan, 341 U.S. at 225. In rejecting a vagueness challenge, the Court noted that while use of the phrase was widespread across a variety of statutes, "[n]o case has been decided holding that the phrase is vague, nor are we able to find any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process." Id. at 230. The Court further observed:

> [D]ifficulty in determining whether certain marginal offenses are within the meaning of the language under attack does not automatically render a statute unconstitutional for indefiniteness. Impossible standards of specificity are not required.

Id. at 231 (citation omitted). Measuring the disputed phrase by "common understanding and practices," the Court concluded that crimes of fraud universally have been deemed to involve moral turpitude. Id. at 232. The Court held that "doubt as to the adequacy of a standard in less obvious cases does not render that standard unconstitutional for vagueness." Id.

Because the INA does not define stalking, we accordingly measure the term by "common understanding and practices" to determine whether it gives sufficiently

12

definite warning of the conduct subject to deportation. Id.; see Lopez v. Gonzales, 127 S. Ct. 625, 630 (2006) (relying on "everyday understanding" and "regular usage" to define the term "trafficking" as used in the INA). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979) (construing "bribery" in the Travel Act by its "ordinary, contemporary, common meaning").

The crime of stalking (along with crimes of domestic violence, violations of protection orders, and crimes against children) was added as a ground for deportation in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Pub. L. No. 104-208, Div. C., Title III-C § 350(a), 110 Stat. 3009-546, 3009-639 (1996).[3] When IIRIRA was adopted, laws against stalking were fairly recent. The first state to criminalize stalking by statute was California, in 1990. See Cal. Penal Code § 646.9 (2007) (current version). By 1992, over half the states had

___

[3] The legislative history suggests that Congress added these deportation grounds to close potential loopholes for aliens who commit crimes against women and children that did not clearly fall within other categories of deportable crimes such as crimes involving moral turpitude and aggravated felonies. See 142 Cong. Rec. S4058-02 (1996). The legislative history does not otherwise define stalking.

13

enacted similar statutes.  Today, stalking is a crime in every state, and interstate travel for stalking is a federal offense.  See 18 U.S.C. § 2261A; see generally 2 Wayne R. LaFave, Substantive Criminal Law § 16.4 (2d ed. 2004 & 2007 Supp.).

Though stalking is an offense unknown to the common law, consensus as to its meaning was aided by a model law commissioned by the Justice Department's National Institute of Justice (set out in the margin).[4]  A working definition

_____

[4] The model law reads as follows:
Section 1.  For purposes of this code:
   (a) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying verbal or written threats or threats implied by conduct or a combination thereof directed at or toward a person;
   (b) "Repeatedly" means on two or more occasions; and
   (c) "Immediate family" means a spouse, parent, child, sibling, or any other person who regularly resides in the household or who within the prior six months regularly resided in the household.
Section 2.  Any person who:
   (a) purposely engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or herself or a member of his or her immediate family or to fear the death of himself or herself or a member of his or her immediate family;
   (b) has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family; and
   (c) whose acts induce fear in the specific person of bodily injury to himself or herself or a

14

of stalking might be:  persistent and intrusive conduct directed at a specific person that conveys menace and that would cause a reasonable person to fear.  This working definition comports with the definition found in treatises, see LaFave, Substantive Criminal Law § 16.4; 86 C.J.S. Threats § 22 (2008), and in law dictionaries, see Black's Law Dictionary 1441 (8th ed. 2004) (defining stalking as "following, or loitering near another, often surreptitiously, with the purpose of annoying or harassing that person or committing a further crime such as assault or battery"); Barron's Law Dictionary 489 (5th ed. 2003) (defining stalking as "persistent, distressing, or threatening behavior consisting of at least two elements: the actor must repeatedly follow the victim and must engage in conduct that annoys or alarms the victim and serves no legitimate purpose").

In virtually every state, stalking entails:  (1) conduct beyond a single occasion, (2) intentionally or

---

member of his or her immediate family or induce fear in the specific person of the death of himself or herself or a member of his or her immediate family; is guilty of stalking. National Institute of Justice, U.S. Dep't of Justice, Project to Develop a Model Anti-Stalking Code for States 43-48 (1993).

15

purposefully directed at a specific person, with (3) the consequence of instilling fear in that person.  State penal codes vary considerably in such particulars as the types of conduct (e.g., following, pursuing, surveilling, cyberstalking), the level of intent (general or specific), and the standard of fear (objective or subjective).  See National Center for Victims of Crime, Stalking Resource Center, Analyzing Stalking Laws, http://www.ncvc.org/src/AGP.Net/Components/DocumentViewer/Download.aspxnz?DocumentID=41531 (last visited March 26, 2008).  The widely-accepted core meaning of stalking is demonstrated by the failure of almost every void-for-vagueness challenge brought against state stalking laws. See People v. Stuart, 100 N.Y.2d 412, 418 n.4 (N.Y. 2003) (collecting state court decisions upholding stalking laws and noting that "vagueness challenges to stalking statutes have almost uniformly been rejected by reviewing courts"); cf. Jordan, 341 U.S. at 230 (rejecting vagueness challenge to "crime involving moral turpitude" where no other court found the phrase vague).

Arriaga argues that variations among state penal codes as to the necessary elements of a stalking crime invalidate the INA's use of the term.  This argument is defeated by the

rule that, absent contrary Congressional intent, federal statutes are not to be construed so that their application is dependent on state law.  See Taylor v. United States, 495 U.S. 575, 591-92, 598 (1990) (construing "burglary" as used in federal sentencing statute according to its "generic, contemporary meaning" as "used in the criminal codes of most States"); Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 119-120 (1983) ("[T]he application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control."); United States v. Turley, 352 U.S. 407, 411 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law.").

Uniformity among state law definitions of stalking is therefore unnecessary to give meaning to the term as used in the federal statute.  We read the INA stalking provision to incorporate the generally accepted contemporary meaning of stalking as discussed above, regardless of the "exact definition or label" used in the various penal statutes. Taylor, 495 U.S. at 599.  So construed, the INA stalking provision is sufficiently definite such that ordinary people would understand which conduct is prohibited.

17

As applied to Arriaga, the INA stalking provision adequately warned him that a conviction under Connecticut's stalking law would subject him to deportation. Arriaga pleaded guilty to stalking in the second degree under Connecticut law, which constitutes his admission that: "with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follow[ed] or l[ay] in wait for such other person and cause[d] such other person to reasonably fear for his physical safety." Conn. Gen. Stat. § 53a-181d(a). Arriaga raised no constitutional objection to his conviction or to the Connecticut law, which in any event has already withstood challenges for vagueness. See State v. Marsala, 44 Conn. App. 84, 97, 688 A.2d 336, 344 (Conn. App.) (holding that Section 53a-181d is not unconstitutionally vague on its face), cert. denied, 240 Conn. 912, 690 A.2d 400 (1997); see also State v. Cummings, 46 Conn. App. 661, 669-670, 701 A.2d 663, 668 (Conn. App. 1997) (terms "repeatedly," "follows," and "lies in wait," as used in Section 53a-181d, were not unconstitutionally vague). Arriaga has thus conceded the validity of his stalking conviction for the purpose of applying the immigration laws. The remaining question is whether that conviction was "stalking" as used in the INA. See Jordan,

18

341 U.S. at 226-27 (limiting vagueness assessment of "crimes of moral turpitude" to "determining whether [the petitioner's] particular offense involves moral turpitude").

The Connecticut law in no way deviates from the consensus understanding of stalking. If anything, Connecticut's version of stalking imposes a heavier prosecutorial burden because it employs two levels of scienter. See Marsala, 44 Conn. at 97, 688 A.2d at 344. One or another stalking statute, elsewhere, might criminalize behavior falling outside the consensus understanding of what the offense entails. But that possibility does not invalidate the application of the INA provision in Arriaga's case. "The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 32 (1963); see also Parker v. Levy, 417 U.S. 733, 757 (1974) (rejecting a vagueness challenge to the phrase "conduct unbecoming an officer and a gentleman" in the Uniform Code of Military); Farrell v. Burke, 449 F.3d 470, 476, 486 (2d Cir. 2006) (rejecting a vagueness

19

challenge to a ban on possession of "pornographic material" as applied to parolee who was found with a magazine that fell within "any reasonable definition" of the "notoriously subjective and elusive" term).

B. The second vagueness inquiry (and "the more important" of the two) is whether the "[s]tatutory language [is] of such a standardless sweep [that it] allows policemen, prosecutors, and juries to pursue their personal predilections." Smith v. Goguen, 415 U.S. 566, 575 (1974); see also Kolender v. Lawson, 461 U.S. 352, 357-58 (1983). A statute that reaches "a substantial amount of innocent conduct" confers an impermissible degree of discretion on law enforcement authorities to determine who is subject to the law. City of Chicago v. Morales, 527 U.S. 41, 60-61 (1999); see Chatin v. Coombe, 186 F.3d 82, 89 (2d Cir. 1999) ("An enactment fails to provide sufficiently explicit standards for those who apply it when it 'impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis.'" (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).

We must therefore determine either that: (1) "[the]

statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement," or (2) "even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." Farrell, 449 F.3d at 494. The INA stalking provision passes both tests.

The statutory terms do not reach any "innocent conduct": a criminal conviction is a predicate for invoking the removal provision, and the statute affords no discretion in commencing removal proceedings. When an alien has been convicted of a stalking crime, removal proceedings must follow. 8 U.S.C. § 1227(a) ("Any alien . . . in and admitted to the United States shall . . . be removed if the alien is within one or more of the following classes of deportable aliens . . . ." (emphasis added)). The immigration service exercises some discretion in determining whether a particular stalking conviction falls within the generally accepted definition of stalking. However, that discretion is constrained by settled precedent that requires a "categorical" approach, looking only to the statutory

definition of the offense (and in rare cases the record of conviction), but not the particular facts underlying the conviction.  See Taylor, 495 U.S. at 600; Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116, 124 (2d Cir. 2007) (applying categorical approach to establish removability under the INA).  Immigration judges may not order removal based on an offense that falls outside the common understanding of stalking.  See Morales, 527 U.S. at 61 (finding loitering statute unconstitutionally vague because "it provides absolute discretion to police officers to decide what activities constitute loitering" (internal quotation marks and citation omitted)); United States v. Rybicki, 354 F.3d 124, 143-44 (2d Cir. 2003) (en banc) (rejecting vagueness challenge to "scheme or artifice to deprive another of the intangible right of honest services" as used in the mail- and wire-fraud statutes, despite instances of "prosecutorial misjudgment" in charging the offense).

Even if the statute did not provide sufficiently clear standards for enforcement, Arriaga's stalking conviction squarely fits within the set of crimes intended as a predicate for deportation.  Arriaga was convicted under a penal provision that defines stalking in a way that falls

22

well within the "core meaning" of the term.  See Thibodeau v. Portuondo, 486 F.3d 61, 69 (2d Cir. 2007) (explaining that "statute as applied to [defendant] would not be unconstitutionally vague because the conduct to which the statute was applied falls within the 'core meaning' of the statute" (citing Smith, 415 U.S. at 577-78)).  In Smith v. Goguen, the Supreme Court invalidated a flag desecration statute because it gave too little guidance to law enforcement authorities or juries as to which uses of the flag were criminal.  The Court distinguished the statute at issue from "statutes that by their terms . . . apply without question to certain activities but whose application to other behavior is uncertain."  Smith, 415 U.S. at 577-78. The Court observed that such statutes may not be vague as applied to "hard-core violator[s] . . . whatever its implications for those engaged in different conduct."  Id. at 577.  Arriaga is a "hard-core violator" because Connecticut's stalking law is comparatively stringent and is unlikely to capture anyone whose conduct is at the borderline of commonly accepted notions of stalking. Application of the INA provision to Arriaga's Connecticut conviction was therefore in no sense arbitrary.

**CONCLUSION**

For the foregoing reasons, the petition is DENIED.