**J. Michael HAYES, Esq., Plaintiff,**

v.

**Nelson F. ZAKIA, Esq., In His Capacity As Chairman Of The State Of New York Attorney Grievance Committee Of The Eighth Judicial District, Defendant.**

No. 01–CV–0907E(SR).

United States District Court, W.D. New York.

July 26, 2004.

J. Michael Hayes, Law Office of J. Michael Hayes, Buffalo, NY, pro se.

Michael J. Russo, New York State Attorney General's Office, Buffalo, NY, for Defendant.

MEMORANDUM and ORDER [1]

ELFVIN, District Judge.

Plaintiff J. Michael Hayes, Esq. commenced this action December 14, 2001, seeking declaratory and injunctive relief against defendants the State of New York Attorney Grievance Committee of the Eighth Judicial District (the "Grievance Committee") and Nelson F. Zakia, Esq., in his capacity as Chairman of the Grievance Committee.[2] Through his Complaint,

---

1. This decision may be cited in whole or in any part.

2. On April 22, 2002 the Grievance Committee was dismissed from this action, leaving Zakia as the sole defendant.

plaintiff seeks a declaration that Disciplinary Rule 2–105(C)(1), 22 N.Y.C.R.R. § 1200.10(C)(1),—which governs statements made by attorneys that they are specialists in a particular area of law—is both facially unconstitutional and unconstitutional as applied to his use of the terms "Board Certified by the National Board of Trial Advocacy as a Civil Trial Specialist" and "Board Certified Civil Trial Advocate" in his advertising. In addition, plaintiff seeks a permanent injunction enjoining defendant from enforcing the provisions of DR 2–105(C)(1) against him. Presently before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons stated hereinbelow, plaintiff's motion will be denied and defendant's cross-motion will be granted in part and denied in part.

The following facts are undisputed unless otherwise noted.[3] Plaintiff, an attorney licensed to practice in the State of New York, was awarded Board Certification in Civil Trial Advocacy in 1995 from the National Board of Trial Advocacy ("NBTA"), an organization accredited by the American Bar Association. Plaintiff thereafter began to refer to himself as a "Board Certified Civil Trial Specialist" in various advertisements. On August 6, 1996 the Grievance Committee first wrote to plaintiff regarding his use of the term "Board Certified Civil Trial Specialist" on his letterhead.[4] On November 19 the Grievance Committee wrote to him regarding his use of the terms "Board Certified

Civil Trial Specialist" and "Call Us When Your Personal Injury Case Requires A Specialist" in his advertisement in the 1996–1997 Talking Phone Book, taking the position that plaintiff's use of such terms was inconsistent with DR 2–105(B).[5] Hayes Aff. ¶ 54, Ex. H. In response to a request by the Grievance Committee, plaintiff agreed to include the name of the certifying organization—i.e., the NBTA—on his letterhead and in future telephone directory advertisements thereby resolving the dispute over his use of the above terms. Id. ¶¶ 56–58, Exs. I–J. Plaintiff thereafter referred to himself as a "Board Certified Civil Trial Specialist/National Board of Trial Advocacy." Id. ¶ 58.

On June 30, 1999 DR 2–105(C)(1) went into effect. Such rule states that "[a] lawyer may state that the lawyer has been recognized or certified as a specialist only as follows":

"A lawyer who is certified as a specialist in a particular area of law or law practice by a private organization approved for that purpose by the American Bar Association may state the fact of certification if, in conjunction therewith, the certifying organization is identified and the following statement is prominently made: 'The [name of the private certifying organization] is not affiliated with any governmental authority. Certification is not a requirement for the practice of law in the State of New York and does not necessarily indicate greater

---

**3.** The Court notes initially that plaintiff has not complied with Rule 56.1 of the Local Rules of Civil Procedure ("LRCvP") inasmuch as he has failed to submit a separate "statement of the material facts as to which [he] contends there is no genuine issue to be tried." LRCvP 56.1(a). While such an omission could serve as a basis to deny plaintiff's motion, the Court will nonetheless exercise its discretion to overlook such noncompliance.

**4.** Hayes Aff. ¶ 51, Ex. G.

**5.** Former DR 2–105(B), in effect at the time, provided as follows: "A lawyer who is certified as a specialist in a particular area of law or law practice by the authority having jurisdiction under the laws of this state over the subject of specialization by lawyers may hold himself or herself out as a specialist, but only in accordance with the rules prescribed by that authority."

competence than other attorneys experienced in this field of law.' "

On November 17, 1999 the Grievance Committee wrote to plaintiff regarding his billboard near the westerly end of the Kensington Expressway. *See* Ex. 1 to Feb. 8, 2002 Decl. of Vincent L. Scarsella, Esq. Such billboard referred to plaintiff as a "civil trial specialist" and included the required disclaimer; however, the Grievance Committee opined that the disclaimer was in such small print that it could not be viewed by passing motorists and therefore requested plaintiff's response regarding whether the disclaimer was "prominently made" as required by DR 2–105(C)(1). On November 30, 1999 plaintiff responded to the Grievance Committee, stating that disclaimers on billboards which advertised tobacco products only had to be five inches high according to federal regulations and that, in an effort to comply with the "prominently made" requirement, he had directed that six-inch letters be used for the disclaimer, but that he was willing to work with the Grievance Committee to resolve the issue. *See* Hayes Aff., Ex. K. On December 14, 1999 the Grievance Committee wrote to plaintiff stating that it was closing the investigation into plaintiff's billboard, but suggested that he reconsider the size of his disclaimer and contact the Committee on Professional Ethics of the New York State Bar Association for an advisory opinion on that issue. Scarsella Decl., Ex. 3. On May 11, 2000 the Grievance Committee sent plaintiff a letter indicating that it had reopened its investigation into plaintiff's billboard advertising based upon another of his billboards on the eastbound lane of Route 5 heading toward Buffalo. According to the letter, it was the Grievance Committee's position that such disclaimer was unreadable by passing motorists and therefore contrary to DR 2–105(C)(1). *Id.*, Ex. 4. Plaintiff responded to the Grievance Committee via a May 17, 2000 letter stating that he had directed his advertiser to remove such billboard and that he had contracted to have new billboards made wherein the disclaimer would be "very large, in bold black type and on a white background." *Id.*, Ex. 5. The Grievance Committee responded May 19, 2000 stating that it was closing the investigation into plaintiff's billboard on Route 5 due to his representation that such would be removed and that new billboards were being designed. *Id.*, Ex. 6. However, the Grievance Committee also stated that it was opening another investigation based on plaintiff's letterhead, wherein plaintiff identified himself as a "Board Certified Civil Trial Advocate National Board of Trial Advocacy"[6] and did not include the required disclaimer. *Ibid.* Plaintiff responded with a May 21 letter in which he indicated his belief that his letterhead did not violate DR 2–105(C)(1) because such did not contain the word "Specialist" and in which he sought clarification on the issue. *Id.*, Ex. 7. Scarsella subsequently sent plaintiff a June 14 letter clarifying the Committee's position and referring plaintiff to Opinion 722 of the New York State Bar Association's Committee on Professional Ethics, which specifically stated that the rule applies to a lawyer's letterhead that states membership in a professional organization "if such membership implies certification in the legal field." *Id.*, Ex. 8. Through his attorneys,[7] plaintiff reiterated his position that DR 2–105(C)(1) was not

---

6. Plaintiff's name as displayed on his letterhead is immediately followed by an asterisk. The corresponding asterisk indicated the following:

"Board Certified Civil Trial Advocate National Board of Trial Advocacy." Scarsella Decl., Ex. 5.

7. Barry Nelson Covert, Esq. and Michael S. Taheri, Esq.

applicable to the certification statement in his letterhead. *Id.*, Ex. 10. Numerous letters were exchanged thereafter among the Grievance Committee, plaintiff and his attorneys, none of which made any progress towards resolving the dispute. The Grievance Committee stated to plaintiff in a June 25, 2001 letter that, if he refused to include the required disclaimer on his letterhead, it would "have no alternative but to request that he formally appear before the Committee with the recommendation of disciplinary action by way of a Letter of Admonition or formal proceedings in the Appellate Division." *Id.*, Ex. 16. Plaintiff subsequently commenced an action in this Court for declaratory relief against the Grievance Committee.[8] However, on November 2, 2001, that action was dismissed by this Court on jurisdictional grounds.[9] Plaintiff then advised the Grievance Committee, in a letter dated November 6, 2001, that the term "Certified Civil Trial Advocate" had been removed from his letterhead. *Id.*, Ex. 17. Consequently, the Grievance Committee closed its file regarding plaintiff's letterhead. *Id.*, Ex. 18. Plaintiff then commenced the instant action on December 14, 2001. Plaintiff subsequently moved for a preliminary injunction on December 21, 2001, which motion was ultimately denied by this Court's September 19, 2002 Memorandum and Order. *See Hayes v. Zakia,* 2002 WL 31207463 (W.D.N.Y.2002).

FRCvP 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving [*sic*] party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, this Court must draw all factual inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Nevertheless, the non-moving party must rebut the motion for summary judgment with more than conclusory allegations and general denials. FRCvP 56(e); *see also Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("conclusory allegations, conjecture and speculation * * * are insufficient to create a genuine issue of fact"). Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff's first claim is that DR 2–105(C)(1) is unconstitutional, both facially and as applied to him, because it vio-

---

8. Michael J. Russo, Esq., sent an August 16, 2001 letter to Covert in response to the complaint that had been filed by the plaintiff. Russo indicated that the Committee would take no disciplinary action against the plaintiff if his advertisements conformed to certain guidelines. Such guidelines provided the acceptable manner in which plaintiff could display the disclaimer in various media—to wit, his billboards, letterhead, business cards and television advertisements. With regard to plaintiff's business cards, Russo indicated that plaintiff could place an asterisk next to his certification statement on the front of the card and place the actual disclaimer on the back of the card. Feb. 8, 2002 Russo Decl., Ex. G.

9. *Hayes v. N.Y. Attorney Grievance Comm. of Eighth Judicial Dist.,* 2001 WL 1388325 (W.D.N.Y.2001).

lates his freedom of expression guaranteed to him under the First and Fourteenth Amendments. In support of his summary judgment motion, plaintiff argues that DR 2–105(C)(1) cannot survive the intermediate level of scrutiny with respect to restrictions upon commercial speech. In opposition and in support of his cross-motion for summary judgment, defendant counters that DR 2–105(C)(1) is valid under such scrutiny. Lawyer advertising is commercial speech that is protected by the First Amendment. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) ("It is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection."). Whether commercial speech may be validly restricted involves a four-part analysis:

> "First, for commercial speech to merit any First Amendment protection, it 'must concern lawful activity and not be misleading.' Next, the government must assert a substantial interest to be achieved by the restriction. If both these conditions are met, the third and fourth parts of the test are 'whether the regulation directly advances the governmental interest asserted' and whether the regulation 'is not more extensive than is necessary to serve that interest.'" *Anderson v. Treadwell,* 294 F.3d 453, 461 (2d Cir.2002) (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)).

**10.** Specifically, Mr. Peel advertised the following on his stationery:
> "Gary Peel
> Certified Civil Trial Specialist
> By the National Board of Trial Advocacy
> Licensed: Illinois, Missouri, Arizona."

**11.** Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility provided:

Thus, in this case the Court must determine whether plaintiff's statement of certification is misleading and, if it is not, whether its potentially misleading character renders it susceptible to a state interest that justifies the disclaimer requirement of DR 2–105(C)(1).

The United States Supreme Court, in *Peel v. Attorney Registration and Disciplinary Comm'n of Ill.,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), addressed an issue similar to the case at hand when it decided whether an Illinois disciplinary rule, which prohibited an attorney from advertising his certification by the National Board of Trial Advocacy, violated the First Amendment. The Supreme Court of Illinois publicly censured Peel, an attorney, for advertising that he was a "Certified Civil Trial Specialist By the National Board of Trial Advocacy." [10] The State Supreme Court found this statement to violate Disciplinary Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility. [11] The state court rejected Peel's argument that the letterhead was protected by the First Amendment, reasoning that such letterhead was misleading and thus outside the confines of First Amendment protection. The United States Supreme Court disagreed and reversed the decision.

In finding the Illinois Disciplinary rule to be in violation of the First Amendment, the plurality reasoned that Peel was in fact so certified, and the advertisement of that fact on the petitioner's letterhead was neither actually nor inherently misleading.

> "A lawyer or law firm may specify or designate any area or field of law in which he or its partners concentrates or limits his or her practice. Except as set forth in Rule 2–105(a), no lawyer may hold himself out as 'certified' or 'specialist'."

As such, the Illinois Disciplinary Rule's absolute prohibition on the certification statement was too broad. *See Peel*, at 110–111, 110 S.Ct. 2281. However, a majority of the Court found the certification statement to be at least potentially misleading and held that other forms of regulation other than a total ban might be allowed. *See id.* at 125, 110 S.Ct. 2281 ("As a majority of this Court agree, * * * petitioner's claim to certification is at least potentially misleading.") (O'Connor, J., dissenting, joined by Rehnquist, C.J. and Scalia, J.). Thus, the Court concluded that, "[t]o the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider screening certifying organizations *or requiring a disclaimer about the certifying organization or the standards of a specialty.*" *Peel*, at 110, 110 S.Ct. 2281 (citing *In re R.M.J.*, 455 U.S. 191, 201–203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982)) (emphasis added).

■ With such principles in mind, this Court had previously held that (1) plaintiff's various statements of certification are potentially misleading and (2) plaintiff had not shown a substantial likelihood of success in arguing that DR 2–105(C)(1) is unconstitutional under the *Central Hudson* test. *See Hayes v. Zakia*, at *4–5 (noting the similarity between plaintiff's statement of certification and the one at issue in *Peel*). Plaintiff has offered nothing substantive in support of his summary judgment motion to change this Court's previous conclusions.[12] Conversely, defendant has met its burden under the *Central Hudson* test by showing that (1) New

York State has a substantial interest in protecting consumers from potentially misleading attorney advertisements and regulating lawyer advertising, (2) DR 2–105(C)(1) directly advances such interests and (3) DR 2–105(C)(1) is narrowly drawn and not more extensive than is necessary to serve the State's interests. *See id.* at *5–6 (citing defendant's evidence and stating the reasons why "[DR] 2–105(c)(1) is narrowly drawn to directly advance New York's substantial interest in protecting the public from potentially misleading advertising"). Therefore, summary judgment will be granted to defendant with regard to plaintiff's claim that DR 2–105(C)(1) unconstitutionally infringes upon his First Amendment rights.[13]

■ Next, the Court turns to the parties' motions with respect to plaintiff's claim that DR 2–105(C)(1) is unconstitutionally vague. Plaintiff contends that DR 2–105(C)(1)'s requirement that the disclaimer be "prominently made" is unconstitutionally vague because it fails to give a person of ordinary intelligence a reasonable opportunity to know either what is prohibited or when a disclaimer satisfies such requirement. In addition, plaintiff argues that DR 2–105(C)(1) is unconstitutionally vague because it fails to give explicit guidelines for the Grievance Committee in enforcing the rule thereby allowing for subjective and arbitrary enforcement. In opposition to plaintiff's motion and in support of his cross-motion, defendant contends that "prominently made" is a "common sense term clear to the average lawyer." Def.'s Mem. of

---

12. In fact, plaintiff appears to have, in support of his present motion, merely submitted a virtually identical copy of his memorandum of law in support of his motion for preliminary injunction. *Compare* Pl.'s Mem. of Law in Supp. of Prelim. Inj., § Ill(C)(1)(i-iii) *with* Pl.'s Mem. of Law in Supp. of Summ. J. Mot., § II(B)(1)(i-iii).

13. Summary judgment will also be granted to defendant with regard to plaintiff's claim that DR 2–105(C)(1) violates Article 1, § 8 of the New York State Constitution inasmuch as the basis for such claim is the same as the basis for his First Amendment claim.

Law, at 5. In addition, defendant argues that the rule is not unconstitutionally vague because the plaintiff has the benefit of guidance from case law, court rules and the Grievance Committee itself in attempting to determine whether a particular advertisement contains a disclaimer that is "prominently made."

 Whether a statute or regulation is unconstitutionally vague involves a two-step inquiry. The Court " 'must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it.' " *Chatin v. Coombe*, 186 F.3d 82, 87 (2d Cir.1999) (quoting *United States v. Strauss*, 999 F.2d 692, 697 (2d Cir.1993)). An unconstitutionally vague law "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Such standards should not be applied mechanically. "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. The Flipside, Hoffman Estates,*

*Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Thus, greater tolerance is allowed with regard to enactments with civil rather than criminal penalties because the consequences are relatively less severe. *Id.* at 498–499, 102 S.Ct. 1186. On the other hand, a law that threatens to inhibit the exercise of a constitutional right—*i.e.*, the right of free speech—is subject to a more stringent vagueness test. *Id.* at 499, 102 S.Ct. 1186; *see also Grayned*, at 109 n. 5, 92 S.Ct. 2294 ("Where First Amendment interests are affected, a precise statute evincing a legislative judgment that certain specific conduct be proscribed, assures us that the legislature has focused on the First Amendment interests and determined that other governmental policies compel regulation.") (citation and punctuation marks omitted).

 Neither party has carried his burden as mandated by FRCvP 56 with respect to plaintiff's claim that DR 2–105(C)(1) is unconstitutionally vague.[14] In denying plaintiff's preliminary injunction motion, this Court had previously held:

"While plaintiff is correct that 'prominently made' in the context of [DR] 2–105(c)(1) is subjective in its interpretation, the language is sufficiently plain and adequate to put attorneys on notice that the disclaimer provision cannot be presented in an obscure fashion. The

---

14. The Court need not linger on the issue of the facial validity of the rule. To show that DR 2–105(C)(1) is unconstitutionally vague on its face, plaintiff must demonstrate that it "either 'could never be applied in a valid manner' or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.' " *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479–480 (2d Cir.1999) (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988)); *see also Brache v. County of Westchester*, 658 F.2d 47, 50 (2d Cir.1981) ("A

statute is unconstitutionally vague on its face only when it cannot be applied to any conduct."). "Facial vagueness occurs when a statute is expressed in terms of such generality that 'no standard of conduct is specified at all.' " *Brache*, at 50–51 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)). DR 2–105(C)(1) is not vague on its face because the proscribed conduct is clear—to wit, the rule clearly and explicitly prohibits an attorney from advertising the fact that he is a specialist, or that he is certified by some entity, without including the required disclaimer.

term 'prominently made' simply informs an attorney who wants to advertise some type of certification that the accompanying disclaimer must be displayed in a manner that will not render it unreadable and meaningless for the average viewer. Furthermore, plaintiff, as an attorney, has the benefit of guidance from case law, court rules and—more importantly—the Grievance Committee." *Zakia,* at *7.

However, this Court also held:

"Such failure should not serve as an indication that plaintiff has not demonstrated serious questions about the merits of the case. In this regard, this Court notes the somewhat arbitrary and inconsistent manner in which the Grievance Committee has issued guidelines in its interpretation of [DR 2–105(C)(1)]. The Court tends to agree with plaintiff that a person of ordinary intelligence would not have determined that placing the disclaimer on the reverse side of a business card would satisfy the 'prominently made' requirement. In addition, it is unclear whether defendant, as Chairman of the Eighth Judicial District Grievance Committee, has the authority to issue guidelines and what effect, if any, such guidelines have in other juris-

dictions. Such arguments make them fair grounds for litigation." *Ibid.* (internal citation omitted).

Thus, while plaintiff had failed to demonstrate a substantial or clear likelihood of success on the merits in arguing that DR 2–105(C)(1) is unconstitutionally vague, he had raised significant issues of fact in support of such argument. The parties have essentially submitted the same arguments and evidence in support of their summary judgment motions as they did with respect to plaintiff's preliminary injunction motion.[15]

Plaintiff has proffered evidence to support his assertion that there are no explicit standards regarding whether a disclaimer is "prominently made" with respect to the various forms of advertising mediums. For example, the regulation does not require that the disclaimer be displayed in a specific font size with respect to its display in a particular advertising medium.[16] In addition, plaintiff has shown that the Committee's enforcement of DR 2–105(C)(1) as applied to him has been somewhat arbitrary and inconsistent. Lastly, plaintiff has provided evidence that the Committee has vacillated in its position regarding what language is specifically and actually required by the rule.[17] Conversely, defen-

---

15. Plaintiff offers some new evidence in support of his motion. He contends that the vagueness of the disclaimer requirement is evinced by the fact that Russo and Scarsella have presented conflicting positions to the Court regarding what language is specifically required by DR 2–105(C)(1). *See* Pl.'s Aug. 4, 2003 Mem. of Law, at 18–19 (pointing out the purported conflicting deposition testimony of Scarsella and Russo's Declaration in opposition to plaintiff's preliminary injunction motion).

16. Defendant counters that the term "prominently made" was utilized instead of imposing specific font size requirements because of the myriad methods and forms of advertising media meant to be covered by the rule. *See Hayes v. Zakia,* at *7 n. 19 (explaining the

defendant employed such language because it could be easily applied to many forms of advertising and because it would be clear to the average lawyer).

17. In addition to the required language of DR 2–105(C)(1), the disclaimer in plaintiff's billboards and yellow pages advertisements includes an eighteen-word introductory statement—*viz.,* "J. Michael Hayes is Board Certified by the National Board of Trial Advocacy as a Civil Trial Specialist." Russo Feb. 8, 2002 Decl., Exs. A, C. Scarsella testified during his deposition that such language was required somewhere in the advertisement inasmuch *as it serves to clarify the remaining* language in the disclaimer and identifies the certifying organization. *See* Scarsella Dep.— Hayes Aff., Ex. CC—, at 93–96. With regard

dant has presented evidence to show that plaintiff's failure to comply with DR 2–105(C)(1) was not due to his confusion or misapprehension of the rule's purported vagueness, but rather due to his own disagreement with the applicability of the rule.[18] Further, it appears that plaintiff was provided significant informal guidance from the Grievance Committee in an effort to attain his compliance with the rule.[19] The conflicting nature of the submitted evidence and the fact that the Court must draw all factual inferences in favor of the non-movant upon considering the other party's summary judgment motion leads the Court to conclude that a reasonable trier of fact could return a verdict for the non-movant. Consequently, neither party is entitled to judgment as a matter of law. Therefore, summary judgment will be denied to both parties with respect to plaintiff's claim that DR 2–105(C)(1) is unconstitutionally vague.

Accordingly, it is hereby **ORDERED** that plaintiff's motion for summary judgment is denied, that defendant's motion for summary judgment is granted with respect to plaintiff's First Amendment

claims, that defendant's cross-motion for summary judgment is denied with respect to plaintiff's claim that DR 2–105(C)(1) is unconstitutionally vague and that the parties shall appear before the Court on August 13, 2004 at 3:00 p.m. (or as soon thereafter as they may be heard) to set a date for trial.

to plaintiff's use of the introductory language, Russo argued that such is "verbiage" that "dilutes the intended message of the Disclaimer." Russo Feb. 8, 2002 Decl. ¶ 10. In addition, Russo declared that such language as it appears on plaintiff's billboards make it "even more difficult for drivers-by to receive the intended message of the disclaimer." *Id.* ¶ 11.

18. For example, beginning in May of 2000, plaintiff repeatedly insisted that DR 2–105(C)(1) did not apply to his letterhead because he had not been referring to himself as a "Specialist." In his correspondences to the Committee, he did not express his confusion regarding the term "prominently made." Rather, he expressed his belief that the disclaimer was not required at all.

19. Defendant afforded plaintiff plenty of opportunity and notice to resolve the matter informally and the Committee consistently

maintained its position that plaintiff's reference to himself as "Board Certified" implicated the inclusion of DR 2–105(C)(1)'s disclaimer provision regardless of whether or not plaintiff used the term "Specialist." Such facts weigh in favor of defendant because they support a showing that plaintiff, as an attorney, had ample notice of the proscribed conduct. *See, e.g., In re Holtzman,* 78 N.Y.2d 184, 191, 573 N.Y.S.2d 39, 577 N.E.2d 30 (1991) (holding that the guiding principle in determining whether a Disciplinary Rule is impermissibly vague is "whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed") (citing *In re Ruffalo,* 390 U.S. 544, 554–555, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (White, J., concurring)) (additional citations omitted).