10-1587-cv
Hayes v. State of N.Y. Atty. Grievance Committee

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

Heard: June 6, 2011          Decided: March 5, 2012

Docket No. 10-1587-cv

- - - - - - - - - - - - - - - - - - - - - - - -
J. MICHAEL HAYES, ESQ.,
    Plaintiff-Appellant,

              v.

STATE OF NEW YORK ATTORNEY GRIEVANCE
COMMITTEE OF THE EIGHTH JUDICIAL DISTRICT,
and DEANNE M. TRIPI, IN HER CAPACITY
AS CHAIR OF STATE OF NEW YORK ATTORNEY
GRIEVANCE COMMITTEE OF THE EIGHTH JUDICIAL
DISTRICT,
    Defendants-Appellees.[*]
- - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN and LYNCH, Circuit Judges.[**]

Appeal from the July 26, 2004, judgment of the United States

District Court for the Western District of New York (John T. Elfvin,

District Judge) and the March 31, 2010, judgment of the United States

District Court for the Western District of New York (H. Kenneth

   Schroeder, Jr., Magistrate Judge), rejecting First Amendment and

void-for-vagueness challenges to Rule 7.4 of the New York Rules of

Professional Conduct concerning attorney specialization.

---

[*]Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Deanne M. Tripi, the current chair of the Committee is
substituted for John V. Elmore.  The Clerk is directed the amend the
official caption to conform to the caption herein.

[**]The Honorable Roger J. Miner, originally a member of the panel,
died on February 18, 2012.  The two remaining members of the panel,
who are in agreement, have determined the matter.  See U.S.C. § 46(d);
2d Cir. IOP E(b); United States v. Desimone, 140 F.3d 457 (2d Cir.
1998).

The Court of Appeals rules that enforcement of part of the disclaimer required by Rule 7.4 violates the First Amendment and that the lack of standards for enforcement of Rule 7.4 renders it void for vagueness as applied to Plaintiff-Appellant Hayes.

Reversed and remanded for entry of judgment in favor of the Plaintiff-Appellant.

> J. Michael Hayes, Esq., pro se, Buffalo, N.Y., for Plaintiff-Appellant.
>
> Simon Heller, Assistant Solicitor General, Office of the N.Y. State Atty. General, New York, N.Y. (Eric T. Schneiderman, N.Y. State Atty. General, Barbara D. Underwood, Solicitor General, Nancy Spiegel, Senior Asst. Solicitor General, Alison J. Nathan, Special Counsel, New York, N.Y., on the brief), for Defendants-Appellees.

JON O. NEWMAN, Circuit Judge.

This appeal concerns a First Amendment challenge to a New York rule requiring attorneys who identify themselves as certified specialists to make a prescribed disclosure statement. The statement must identify the certifying organization, which must have been approved by the American Bar Association ("ABA"), and must include a disclaimer concerning certification. Plaintiff-Appellant, J. Michael Hayes, Esq., appeals from the July 26, 2004, judgment of the United States District Court for the Western District of New York, John T. Elfvin, Judge, granting summary judgment to Defendants-Appellees State of New York Attorney Grievance Committee of the Eighth Judicial District ("Grievance Committee") and Nelson F. Zakia, the then-chairman of the Grievance Committee with respect to Hayes's First Amendment claim. Hayes also appeals from the March 31, 2010, judgment

of the United States District Court for the Western District of New York, H. Kenneth Schroeder, Jr., <u>Magistrate Judge</u>, rejecting, after a bench trial, Hayes's claim, based on unconstitutional vagueness, against the Grievance Committee and John V. Elmore, Esq., the then-current chairman.  On appeal, the issue is whether Rule 7.4 of the New York Rules of Professional Conduct, codified at N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.53(c)(1) (2011) ("Rule 7.4"),[1] which requires a prescribed disclaimer statement to be made by attorneys who state that they are certified as a specialist in a particular area of the law, either violates Hayes's freedom of speech or is unconstitutionally vague.

Because enforcement of two componentx of the required disclaimer statement would violate the First Amendment and because the absence of standards guiding administrators of Rule 7.4 renders it unconstitutionally vague as applied to Plaintiff-Appellants Hayes, we reverse with directions to enter judgment for the Plaintiff-Appellant.

Background

Hayes has been licensed to practice law in the State of New York since 1977, limiting his practice to representing plaintiffs in civil litigation.  He has taught at the Buffalo Law School, lectured at New York State Bar Association programs, and published articles on civil litigation.  In 1995 he was awarded Board Certification in Civil Trial Advocacy by the National Board of Trial Advocacy ("NBTA"),[2] an

---

[1]Before 2009, the rule at issue was Disciplinary Rule 2-105(c)(1) in the Code of Professional Responsibility, codified at N.Y. Comp. Codes R. & Regs. tit 22, § 1200.10(c)(1) ("DR 2-105").  The text of the rule has remained unchanged since a 1999 amendment to DR 2-105.

[2]The NBTA is now known as the National Board of Legal Specialty Certification.

-3-

organization accredited by the American Bar Association. Thereafter Hayes began to refer to himself as a "Board Certified Civil Trial Specialist" in various advertisements, including his letterhead. See Hayes v. Zakia, 327 F. Supp. 2d 224, 226 (W.D.N.Y. 2004). In August 1996, and again on November 1996, the Grievance Committee, which is appointed by the Appellate Division (Fourth Department) and which is empowered to investigate allegations of professional misconduct, including complaints of improper advertising, wrote to Hayes and took issue with his use of the term "specialist." Hayes agreed to include the name of the NBTA on his letterhead and in future telephone directory advertisements. See id.

On June 30, 1999, Disciplinary Rule 2-105(C)(1) of New York's Code of Professional Responsibility, N.Y. Comp. Cpdes R. & Regs. tit. 22 § 1200.10(c)(1), went into effect. DR 2-105(C)(1) is the predecessor of current Rule 7.4, which carries forward the same text. Rule 7.4 permits a lawyer certified as a specialist by an ABA-approved organization to state that fact provided the lawyer also makes a prescribed statement that includes a disclaimer about certification of 40 words plus the name of the certifying organization. Rule 7.4 states:

> A lawyer who is certified as a specialist in a particular area of law or law practice by a private organization approved for that purpose by the American Bar Association may state the fact of certification if, in conjunction therewith, the certifying organization is identified and the following statement is prominently made: "[1] The [name of the private certifying organization] is not affiliated with any governmental authority[,] [2] Certification is not a requirement for the practice of law in the State of New York and [3] does not necessarily indicate greater competence than other attorneys experienced in this field of law."

-4-

We will refer to the three components of the statement, which we have numbered, as the "Disclaimer." Rule 7.4 provides no details for determining what will satisfy the requirement that the required statement is "prominently made."

In the second half of 1999, Hayes placed ads on two billboards in Buffalo. Although the billboards contained the Disclaimer, the Grievance Committee wrote to Hayes questioning whether the print size of the Disclaimer on one of the billboards complied with the "prominently made" requirement. Hayes responded that he had attempted to satisfy DR 2-105(C)(1) by using six-inch letters, which was one-inch larger than what was required for federal cigarette warnings on billboards. The Grievance Committee closed its investigation.

In May 2000, the Grievance Committee twice contacted Hayes, first about the Disclaimer included on the second billboard, and then to indicate that it was beginning an investigation into his letterhead, which did not contain the Disclaimer. Hayes responded that he did not believe that the Disclaimer was necessary because the letterhead indicated that he was "Board Certified," rather than a "specialist." The Grievance Committee responded that a claim of certification implies specialization, so as to require the Disclaimer, and indicated that it would recommend that formal disciplinary action be instituted unless Hayes modified his letterhead. Hayes then commenced a declaratory judgment action in the Western District of New York. The Grievance Committee requested Judge Elfvin to abstain from the case due to the pending state disciplinary action. The Court granted that request and dismissed the case. See Hayes v. N.Y. Attorney Grievance Committee, No. 01-CV-0545E, 2001 WL 1388325 (W.D.N.Y. Nov. 1, 2001).

-5-

Shortly thereafter Hayes informed the Grievance Committee that he would comply with DR 2-105(C)(1), as directed, and the Grievance Committee closed its investigation.

In December 2001, Hayes commenced the current action, seeking a declaration that DR 2-105(C)(1) is unconstitutional both facially and as applied to his advertising. The complaint also sought to permanently enjoin the Defendant from enforcing DR 2-105(C)(1) against the Plaintiff. The District Court denied the motion for a preliminary injunction, see Hayes v. Zakia, No. 01-CV-0907E, 2002 WL 31207463 (W.D.N.Y. Sept. 17, 2002), and both parties moved for summary judgment. The District Court, relying on the Supreme Court's decisions in Peel v. Attorney Registration and Disciplinary Commission, 496 U.S. 91 (1990), and Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980), found that the State had a substantial interest in protecting consumers from potentially misleading attorney advertisements; that DR 2-105(C)(1) advanced that interest; and that the rule was narrowly drawn. See Hayes, 327 F. Supp. 2d at 230. With respect to vagueness, the District Court rejected the Plaintiff's claim that the rule was unconstitutionally vague on its face, but determined that the Plaintiff had raised issues of fact regarding his as-applied vagueness challenge. See id. at 232 n.14, 233.

The parties consented to a bench trial on the vagueness question before Magistrate Judge Schroeder, who ruled that DR 2-105(C)(1) was not constitutionally vague as applied. Specifically, the Magistrate Judge stated that the language "prominently made" signaled that the Disclaimer must be noticeable or conspicuous and permitted a "single

-6-

standard throughout the spectrum of advertising media."  In addition, he stated that this language was sufficient to enable a person "of ordinary intelligence" to understand what the regulation required and that it also provided sufficiently explicit standards to guide the Grievance Committee in the enforcement of the regulation.

## Discussion

This Court reviews <u>de novo</u> a grant of summary judgment, <u>see</u> <u>Owens v. New York City Housing Authority</u>, 934 F.2d 405, 408 (2d Cir. 1991), the standards for which are well established, <u>see</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986).

<u>Certification of attorney specialists</u>.  Rule 7.4(d) of the ABA's Model Rules of Professional Responsibility permits a lawyer to be identified as a specialist in a particular field of law provided that (1) the lawyer has been certified by an organization approved by a state or accredited by the ABA and (2) the name of the certifying organization is clearly identified. <u>See</u> Model Rules of Professional Conduct R. 7.4(d) (2009).  48 states have rules that permit lawyers to identify themselves as specialists.  The rules of 32 of these states are similar to the ABA's model rule,[3] although some of these require

---

[3]<u>See</u> Ala. Rules of Prof. Conduct, Rule 7.4(c) (2011); Alas. R. Prof. Conduct 7.4(b) (2011); Ariz. Rules of Prof'l Conduct, R. 7.4(a)(3) (2011); Ark. Rules of Prof. Conduct 7.4(d) (2011); Cal. Rules of Prof'l Conduct, Rule 1–400(D)(6) (2011); Conn. Rules of Prof'l Conduct 7.4A (2011); Del. Prof. Cond. R. 7.4(d) (2011); Fla. Bar Reg. R. 4–7.2(c)(6) (2011); Ga. R. & Regs. St. Bar 7.4 (2011); Idaho Rules of Prof'l Conduct, R. 7.4(c) (2011); Ind. Rules of Prof'l Conduct 7.4(d) (2011); Iowa R. of Prof'l Conduct 32:7.4(d) (2011); Kan. Rules of Prof. Conduct 7.4(d) (2011); Ky. SCR Rules 7.40 (2011); La. St. Bar Ass'n Art. XVI § 7.2(c)(5) (2011); Me. Rules of Prof'l Conduct 7.4(d) (2010); Mont. Prof. Conduct R. 7.4 (2010); Neb. Ct. R. of Prof. Cond. § 3–507.4 (2011); Nev. Rules of Prof'l Conduct 7.4(d) (2011); N.H. Rules of Prof'l Conduct Rule 7.4(c) (2011); N.J. Court Rules, RPC 7.4 (2011); N.M. R. Prof. Conduct, 16–704 (2011); N.C.

state board or state court approval of the certifying body.[4]  Many of the states that have not adopted the Model Rule require any claim of specialization to  be accompanied by various forms of disclaimers, such as a statement that the state does not certify lawyers as specialists.[5]  Two of the 48 states, Minnesota and Missouri, permit identification of a lawyer as a specialist even in the absence of certification, but require disclosure that there has been no certification by an organization accredited by a state board or court.[6] One state, West Virginia, prohibits lawyers from identifying themselves as specialists except for patent attorneys and proctors in admiralty.[7]  One state, Maryland, prohibits identification as a specialist with no exceptions.[8]  Michigan and Mississippi have no rules concerning communications about lawyer specialization.

Efforts by states or bar associations to restrict lawyer

---

Prof. Cond. Rule 7.4(b) (2011); Ohio Prof. Cond. Rule 7.4(e) (2011); Or. Rules Prof'l Conduct 7.1(4) (2009); Pa. RPC 7.4(a) (2011); S.C. Rule 7.4(a), RPC, Rule 407, SCACR (2010); S.D. Codified Laws § 16-18-appx.-7.4(d) (2011); Tenn. Sup. Ct. R. 8, Rule 7.4 (2011); Tex. R. Prof. Conduct 7.4(b) (2011); Utah Rules of Prof'l Conduct, Rule 7.4(d) (2011); Wis. SCR 20:7.4(d) (2011); Wyo. Prof. Conduct Rule 7.4(d) (2010).

[4]See Ala. Rules of Prof. Conduct, Rule 7.4(c) (state bar approval); Ariz. Rules of Prof'l Conduct, R. 7.4(a)(3) (state board approval); Conn. Rules of Prof'l Conduct 7.4A (state court committee approval); Pa. RPC 7.4(a) (state court approval); S.C. Rule 7.4(a), RPC, Rule 407 SCACR (state court approval); Tex. R. Prof. Conduct 7.4(b) (state board approval).

[5]See, e.g., Colo. RPC 7.4(d) (2011); Ill. Sup. Ct. R. Prof'l Conduct, R. 7.4 (2011); Va. Sup. Ct. R. pt. 6, sec. II, 7.4 (2011).

[6]See Minn. Rules of Prof'l Conduct 7.4(d) (2011); Mo. Sup. Ct. R. 4-7.4 (2010).

[7]See W. Va. Prof. Cond. Rule 7.4 (2011).

[8]Md. Lawyer's R. Prof'l Conduct 7.4(a) (2011).

advertising, particularly ads asserting accreditation in specialized areas of law, inevitably create some tension between legitimate concerns to protect the public from misleading claims and guild mentality maneuvers to stifle legitimate competition in the market for legal services. The ABA has endeavored to steer a course between these competing concerns by establishing standards for accreditation of specialty certification programs. These standards permit a certifying organization to certify lawyers in a field of specialization only if a lawyer has practiced in the specialty for at least three years, spent at least one-fourth of that time in the specialty area, passed a written exam, obtained five recommendations a majority of which are from judges or lawyers, taken at least 36 hours of continuing legal education ("CLE") in the specialty area in the preceding three years, and be in good standing. See ABA Standards for Special Certification Programs for Lawyers, § 4.06, http://www.americanbar.org/groups/professional_responsibility/commit tees_commissions/specialization/resources/resources_for_programs/acc reditation_standards.html (last visited Jan. 18, 2012). Pursuant to these criteria, the ABA has accredited the NBTA to certify lawyers as a specialist in the areas of trial, criminal, and family law. See http://www.nblsc.us (last visited Jan. 18 2012). The standards of the NBTA for attorney certification as a specialist include at least 30 percent concentration in the field for at least the preceding three years, at least 45 hours of CLE in the preceding three years, ten to twelve references, including at least three judges and three

-9-

attorneys, being lead counsel in at least five jury trials, and successful completion of a six-hour NBTA examination.  See http://www.nblsc.us/certification_standards_civil/.  A certified attorney is required to apply for recertification after five years. See id. The NBTA certified Hayes in civil trial advocacy in 1995 and recertified him in 2000.

Constitutional standards for restrictions on lawyer advertising. Both parties agree that attorney advertising is commercial speech, which may be subjected to restrictions so long as they satisfy the standards set forth by the Supreme Court in Central Hudson.  The four-part test is as follows:

> First, for commercial speech to merit any First Amendment protection, it "must concern lawful activity and not be misleading." Next, the government must assert a substantial interest to be achieved by the restriction.  If both these conditions are met, the third and fourth parts of the test are "whether the regulation directly advances the governmental interest asserted" and whether the regulation "is not more extensive than is necessary to serve that interest."

Anderson v. Treadwell, 294 F.3d 453, 461 (2d Cir. 2002)(quoting Central Hudson, 447 U.S. at 563–66).  In some contexts, a less rigorous First Amendment test applies to governmental requirements that compel rather than prohibit speech. See Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. 1324, 1339–40 (2010); Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651–52 (1985); In re R.M.J., 455 U.S. 191, 202–03 (1982); National Electrical Manufacturers Assn. v. Sorrell, 272 F.3d 104, 113–14 (2d Cir. 2001). But see Riley v. National Federation of

-10-

<u>Blind of N.C., Inc.</u>, 487 U.S. 781, 796–97 (1988); <u>Milavetz</u>, 130 S. Ct. at 1343 (Thomas, J., concurring in part and concurring in the judgment); <u>Glickman v. Wileman Brothers & Elliott, Inc.</u>, 521 U.S. 457, 480–81 (1997) (Souter, J., dissenting).

In two decisions the Supreme Court has considered the constitutional validity of state restrictions on professionals holding themselves out as specialists. <u>See</u> <u>Peel</u> and <u>Ibanez v. Florida Dep't of Business and Professional Regulation</u>, 512 U.S. 136 (1994). The teaching of these two cases is not entirely clear.

In <u>Peel</u>, the Supreme Court considered a prohibition against an attorney's advertisement that stated that he was a civil trial specialist certified by the NBTA. The Court held, 5 to 4, that absolute prohibition of the certification statement violated the First Amendment. <u>See</u> <u>Peel</u>, 496 U.S. at 99–111 (Stevens, J., with whom Brennan, Blackmun, and Kennedy, JJ., join); <u>id.</u> at 111–17 (Marshall, J., with whom Brennan, J. joins, concurring in the judgment). The plurality opinion was willing to assume, however, that the specialist certification was "potentially misleading," <u>id.</u> at 109, and observed that, "[t]o the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider . . . requiring a disclaimer about the certifying organization or the standards of a specialty," <u>id.</u> at 110. Justice Marshall's concurring opinion noted that the certification statement was "potentially misleading," <u>id.</u> at 111, and also suggested that a state "could require a lawyer claiming certification by the NBTA as a civil trial specialist to provide additional information in order to

-11-

prevent that claim from being misleading," id. at 117.

The opinions in Peel differed as to the respect in which a certification might be misleading. For the plurality, it could be misleading "if the certification had been issued by an organization that had made no inquiry into [the lawyer's] fitness, or by one that issued certificates indiscriminately for a price." Id. at 102. For Justices Marshall and Brennan, "[t]he name 'National Board of Trial Advocacy' could create the misimpression that the NBTA is an agency of the Federal Government," id. at 112, and they stated that a state could require "a disclaimer stating that the NBTA is a private organization not affiliated with, or sanctioned by, the State or Federal Government," id. at 117. Justice White also considered the certification statement "potentially misleading" for the reasons stated by Justices Brennan and Marshall. Id. at 118 (White, J., dissenting). The Chief Justice and Justices Scalia and O'Connor considered the certification statement "inherently likely to deceive," id. at 121 (O'Connor, J., with whom Rehnquist, C.J., and Scalia, J., join, dissenting), in that it "lead[s] the consumer to believe that this lawyer is better than those lawyers lacking such certification," id. at 123, and "to conclude that the State has sanctioned the certification," id.

Thus, although the absolute prohibition of a certification statement was rejected 5 to 4, at least six members of the Court (the Chief Justice and Justices Brennan, Marshall, O'Connor, Scalia, and White) considered the statement at least potentially misleading, believing that it could be understood to imply state sanctioned

-12-

certification. And Justice Stevens's opinion for the plurality also indicated that a state "could require a disclaimer stating that the NBTA is a private organization not affiliated with, or sanctioned by, the State or Federal Government." Id. at 117.

Four years later in Ibanez, the Court, considering a state's censure of a lawyer for truthfully listing herself as a CPA (Certified Public Accountant) and a CFP (Certified Financial Planner), sent a rather different message. Invalidating by a vote of 7 to 2 the censure as violative of the First Amendment, Ibanez, 512 U.S. at 143– 49, the Court began by emphasizing the requirement from Central Hudson that "[c]ommercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." Id. at 142 (citing Central Hudson, 447 U.S. at 566) (footnote omitted); see Florida Bar v. Went For It, Inc., 515 U.S. 618, 625–26 (1995). Continuing, the Court in Ibanez noted that "[t]he State's burden is not slight," and that "'[m]ere speculation or conjecture' will not suffice; rather the State 'must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Id. at 143 (quoting Edenfield v. Fane, 507 U.S. 761, 770, 771 (1993)). And, said the Court, "we cannot allow rote incantation of the words 'potentially misleading' to supplant the [regulating body's] burden." Id. at 146 (citing Edenfield, 507 U.S. at 771).

Then, recalling that Peel had indicated some tolerance for a

-13-

disclaimer to avoid potentially misleading statements about certification, the Court stated that Ibanez "does not fall within the caveat noted in Peel covering certifications issued by organizations that 'had made no inquiry into [the lawyer's] fitness,' or had 'issued certificates indiscriminately for a price,'" id. at 148 (quoting Peel, 496 U.S. at 102), thereby using the extreme examples of a potentially misleading certification offered by the plurality opinion in Peel, rather than a consumer's possible belief that the certifying organization was affiliated with the government, which had been noted by five Justices in Peel. Indeed, the Court in Ibanez invalidated the requirement that a disclaimer state that the certifying agency is not affiliated with the state or federal government "[g]iven the state of the record–the failure of the [regulating agency] to point to any harm that is potentially real, not purely hypothetical." Id. at 146. The Court even observed that the detail required in the disclaimer, which also included the requirements for certification, was too extensive to be included on a business card or letterhead or in a yellow pages listing. See id. at 146–47.

Thus, we are left to wonder whether to follow Peel's apparent approval of some sort of disclaimer to avoid at least some potentially misleading aspects of a certification statement or to insist, as Ibanez did, on a record demonstrating real harms that will be alleviated to a material degree by the challenged disclaimer requirement. Despite this perplexity, we will consider separately the three components of the Disclaimer at issue in the pending case and then turn to the vagueness challenge to the requirement that the

-14-

Disclaimer be "prominently made."

We see no First Amendment infirmity in the required assertion that the certifying organization, i.e., the NBTA, is not affiliated with any governmental authority.  Absent this assertion, which is entirely accurate, there would be a risk that some members of the public would believe that New York State or its judicial branch had authorized the NBTA to certify lawyers in their field of specialty.  Such a belief might make some people think that this certification is more valuable than a certification conferred by a private organization without official authorization.  Avoiding such a possible misconception furthers a substantial governmental interest in consumer education and is not more intrusive than necessary to further that interest.  Although the Grievance Committee has not developed a record in support of the possible misconceptions concerning government affiliation, we feel obliged to  follow what a majority of the Court said in Peel on this precise subject in a case dealing explicitly with NBTA specialist certification.

The statement that certification is not a requirement for the practice of law is more questionable.  It is sought to be justified on the basis that, absent this assertion, there would be a risk that some members of the public would believe that certification is required to practice law, thereby leading them to think that they must limit their choice of state-licensed lawyers to those who have been certified as specialists. See Appellees' Br. At 18, 23.  This possible belief that certification is needed to practice law is sufficiently strained to require some basis in the record to support it.  See, e.g., Florida

-15-

Bar, 515 U.S. at 626 ("'[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the Harms it recites are real . . . .'" (quoting Rubin v. Coors Brewing Co., 514 U.S. 476, 487 (1995) (emphasis added). Although trial testimony is not required, the proponents of a restriction must either advance an interest that is self-evident or put something in the record to make the required "demonstrat[ion]." No such demonstration is present in the record before us. And the alleged harm is surely not self-evident. It is difficult to imagine that any significant portion of the public observing the thousands of lawyers practicing in New York without certification believe that all of them are acting unlawfully. Because ths second statement relies on "mere speculation or conjecture," Edenfield v. Fane, 507 U.S. 761, 770 (1993), it does not satisfy the Central Hudson test.

The third required assertion—that certification "does not necessarily indicate greater competence than other attorneys experienced in this field of law"—is even more problematic. Although the assertion might be technically accurate, depending on how "competence" and "experienced in the field" are understood, the assertion has a capacity to create misconceptions at least as likely and as serious as that sought to be avoided by the first assertion. Some members of the public, reading this third assertion, might easily think that a certified attorney has no greater qualifications than other attorneys with some (unspecified) degree of experience in the designated area of practice. In fact, the qualifications of an attorney certified as a civil trial specialist by the NBTA include having been lead counsel in

-16-

at least 5 trials and having "actively participated" in at least 100 contested matters involving the taking of testimony, passing an extensive examination, participating in at least 45 hours of CLE, and devoting at least 30 percent of the lawyer's practice to the specialized field. See http://www.nblsc.us/certification_standards_civil/. These qualifications may reasonably be considered by the certifying body to provide some assurance of "competence" greater than that of lawyers meeting only the criterion of having some experience in the field, and a contrary assertion has a clear potential to mislead. Such a requirement does not serve a substantial state interest, is far more intrusive than necessary, and is entirely unsupported by the record. As such, it cannot survive First Amendment scrutiny.

Because the first of the three statements in the Disclaimer may be required, we must consider the Plaintiff's challenge to the entire Disciplinary Rule on the ground of vagueness, a challenge based on the requirement that the Disclaimer is "prominently made" in conjunction with an attorney's statement of the fact of certification. To determine whether a regulation is unconstitutionally vague, we "must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited." United States v. Strauss, 999 F.2d 692, 697 (2d Cir. 1993) (internal quotation marks omitted). Although regulations with civil consequences "receive less exacting vagueness scrutiny" than criminal statutes, see Arriaga v. Mukasey, 521 F.3d 219, 223 (2d Cir. 2008), regulations that limit the exercise of constitutionally protected rights are subject to an enhanced vagueness test, see Village of

-17-

Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 499 (1982), and the practice of a profession is entitled to some constitutional protection, see Board of Education v. Roth, 408 U.S. 564, 572 (1972).  In addition to a requirement of adequate notice of what is prohibited, a regulation must provide at least as much notice of what is required. See Rock of Ages Corp. V. Secretary of Labor, 170 F.3d 148, 156 (2d Cir. 1999); cf. Village of Hoffman Estates, 455 U.S. at 498–502 (finding that a licensing requirement for the sale of items "designed or marketed for use with illegal cannabis or drugs" was not vague as applied because the plaintiff "had ample warning that its marketing activities required a license").

After determining whether a regulation affords adequate notice, we must also determine whether it "provides explicit standards for those who apply it," Strauss, 999 F.2d at 297 (internal quotation marks and alteration omitted), to guard against the risk of discriminatory or inconsistent enforcement.  A regulation will encounter valid vagueness objection if it accords "unfettered discretion" to those who enforce it, Chatin v. Combe, 186 F.3d 82, 89 (2d Cir. 1999), and if administrators cannot determine the meaning of a prohibition, those subject to it "can hardly [be] expect[ed] . . . to do so," Fox TV Stations, Inc. v. FCC, 613 F.3d 317, 331 (2d Cir. 2010), cert. granted, 131 S. Ct. 3065 (2011) (No. 10–1293).

Several federal statutes that impose disclosure requirements use generalized terms to indicate an adequate degree of visibility. Required warnings in cigarette advertising must be made in "conspicuous and legible type." 15 U.S.C. § 1333(b)(1) (2011).

Required warning on hazardous substances must be "located prominently and . . . in conspicuous and legible type." 15 U.S.C. § 1261(p)(2)(2008). Required warnings about the dangers of alcohol must be in a "conspicuous and prominent place" on a beverage container. 27 U.S.C. § 215(b) (2011). We note, however, that in some instances, regulations, and sometimes statutes, provide details for compliance with such terms. This has been done for warnings about alcohol, <u>see</u> 27 C.F.R. § 16.22 (2011), hazardous substances, <u>see</u> 16 C.F.R. § 1500.121(c) (2011), and cigarettes, <u>see</u> Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, sec. 201, § 4(a)(2), 123 Stat. 1842, 1843 (2009) (to be codified at 15 U.S.C. § 1333). Specificity may also be provided through the availability of pre-enforcement advisory opinions. <u>See</u> <u>Mason v. Florida Bar</u>, 208 F.3d 952, 954 n.1 (11th Cir. 2000).

We consider it a close question whether "prominently made" provides adequate notice to lawyers as to the required placement and type font of the Disclaimer in writings, which include billboards, stationery, and business cards, or the speed and duration of its expression in radio or television ads. Specificity would be helpful, yet we understand the Grievance Committee's reluctance to prescribe details that would apply to advertising that can be communicated in so many forms. Moreover, we are confident that, because there are sufficient instances of core application of the rule – for example, setting the disclaimer in type too small to be legible in the context of the particular medium, or in a color with insufficient contrast to be noticeable by the average reader of the particular advertisement –

in which any lawyer of ordinary intelligence would be on clear notice that the rule would be violated, the prominence requirement would likely survive a facial challenge. The record in this case, however, demonstrates that the Disciplinary Rule is unconstitutional as applied to Hayes.

Hayes advertised on billboards that set forth the disclaimer in lettering six inches high, one inch larger than the lettering required by the federal government for health warnings on similar cigarette advertising. It is not our role to assess whether such a disclaimer does or does not comply with the New York rule, and this case does not require us to opine on whether a clear and specific rule that required even larger lettering would comport with the Constitution. We find ourselves unable to conclude, however, that a lawyer of average intelligence could anticipate that lettering of that dimension could be construed as not "prominently made." Although Hayes was never in fact disciplined for violation of the rule, the mere existence of repeated and extended investigations of his conduct created a cloud on his good standing as a member of the bar that was a meaningful adverse consequence to him, and that would clearly chill legitimate advertising by similarly situated lawyers, based on a rule whose contours that a lawyer of ordinary skill and intelligence could not reasonably discern.

Our concern is only exacerbated by the inability of the Committee's representatives to clarify the content of the rule. A former principal counsel to the Committee acknowledged that his successor would likely apply a different standard of "what constitutes

prominently made." He also testified that he did not think "there's an obligation to set forth an objective standard" as to how long the Disclaimer would be displayed in a television commercial, and as to whether his successor would use the same objective standard he used, answered, "I doubt it. [I]t's a different person." He also said he could not tell if the Disclaimer was prominently made on a billboard or a TV commercial unless he had seen them. With respect to the size of lettering of the disclaimer on a Hayes billboard, the attorney for the Grievance Committee at one time indicated that letters must be six inches in height, but the Committee apparently accepted four-inch letters. At trial he could not state whether placing the disclaimer in a footnote on the last page of a Hayes document would satisfy the prominence requirement.

Although the uncertainties as to how the prominence requirement will be enforced could be alleviated if the Grievance Committee would give pre-enforcement guidance to inquiring attorneys, such guidance was not available to Hayes. The former principal counsel to the Grievance Committee was asked at trial, "[I]s there a way that you would assist the attorney if there were not a grievance file pending?" He replied, "The short answer is, no." He added that the Committee did not provide advisory opinions because, in part, "it would probably take up most of our work." Because the prominence requirement is not clear to those who sought to enforce it against Hayes's billboards, let alone to Hayes as a lawyer of ordinary skill and intelligence attempting to comply with it, it cannot validly be enforced against

-21-

him in this context.  See Fox TV Stations, Inc., 613 F.3d at 331.  It is therefore void for vagueness as it has been applied to Hayes.

Conclusion

The judgments of the District Court are reversed, and the case is remanded with directions to enter judgment for the Plaintiff-Appellant declaring the second and third components of the Disclaimer invalid and enjoining enforcement of the first component against Hayes absent clear advance notice to him from the Committee of specific alleged defects in his advertising and an opportunity for him either to know what he must do to comply or to seek judicial review of the Committee's elaboration of the requirement.